FILED
2020 Nov-06  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

ELECTRONICALLY FILED
10/6/2020 9:46 PM
01-CV-2020-903456.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>01<br><br>Date of Filing:<br>10/06/2020 | Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### LAUREN CHAMBERS v. BBVA USA

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other

**First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☑ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/ Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING          A ☐ APPEAL FROM DISTRICT COURT          O ☐ OTHER

R ☐ REMANDED          T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES  ☐ NO          Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**          ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

| WAT056 | 10/6/2020 9:46:47 PM | /s/ JOHN GRIFFIN WATTS |
| --- | --- | --- |
| | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**          ☐ YES  ☑ NO  ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**          ☐ YES ☐ NO

ELECTRONICALLY FILED
10/6/2020 9:46 PM
01-CV-2020-903456.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| **LAUREN CHAMBERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | |
| | ) | |
| **BBVA USA a/k/a** | ) | |
| **BBVA COMPASS; Fictitious** | ) | |
| **Defendants "A" "B" and "C"** | ) | |
| **thereby intending to refer to the** | ) | |
| **legal entity, person, firm or** | ) | |
| **corporation which was responsible** | ) | |
| **for or conducted or allowed the** | ) | |
| **wrongful acts alleged in the** | ) | |
| **Complaint; Names of the Fictitious** | ) | |
| **parties are unknown to the Plaintiff** | ) | |
| **at this time but will be added by** | ) | |
| **amendment when ascertained** | ) | |
| | | |
| **Defendants.** | | |

## **COMPLAINT**

**COMES NOW** the Plaintiff, Lauren Chambers, by and through counsel, and

for Plaintiff's Complaint against the Defendant states as follows:

1.    This action arises out of Defendant's violations of the Fair Credit

Reporting Act[1] (15 U.S.C. § 1681 et seq. [hereinafter "FCRA"]), out of state law

---

[1] Any reference to the FCRA or any part thereof encompasses all relevant parts and
subparts thereto.

violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and the fraudulent conduct of Defendant.

2.    The Plaintiff had her credit pulled by Defendant BBVA USA a/k/a BBVA Compass ("BBVA") without her permission and BBVA had no reason to believe it had permission, authority or a permissible purpose to pull Plaintiff's credit report.

## JURISDICTION

3.    Personal jurisdiction exists over Defendant as it had the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.  All the actions described in this suit occurred in Alabama.

4.    Subject matter jurisdiction exists as this Court is a Court of general jurisdiction.

## VENUE

5.    Venue is proper as Plaintiff lives in this judicial district and the Defendant does business in this judicial district.

## PARTIES

6.    Plaintiff Lauren Chambers (hereinafter "Plaintiff") is a natural person who is a resident of Jefferson County, Alabama.

7.     Defendant BBVA USA is a domestic bank that, as a part of a significant amount of its business, pulls consumer credit reports from consumers.

## FACTUAL ALLEGATIONS

### Plaintiff Has No Mortgage Loan or Other Banking Relationship With BBVA Bank and Defendant BBVA Knew Plaintiff Did Not Want to Apply For a Mortgage Loan

8.     Plaintiff did not have and does not have any checking or other accounts with BBVA at all times relevant to this matter.

9.     Plaintiff had no business relationship with Defendant BBVA as of February 24, 2020.

10.     Plaintiff does not have any mortgage loan with Defendant BBVA.

11.     On or about February 24, 2020 Plaintiff and her fiancé, Casey Benefield, visited a branch office for BBVA at its Riverchase location.

12.     The purpose of the visit was to inquire about the various loan options that might be available to Plaintiff and her fiancé (Benefield) for an upcoming home purchase at some point in the future.

13.     Plaintiff and her fiancé met with a BBVA employee, Angelique Kennedy.

14.     They informed her of the purpose of the meeting.

15.     During the meeting, both Plaintiff and Benefield expressed to Kennedy that they had no intention of applying for a loan at that time. During the meeting

3

they also stated that they did not want their credit pulled, but that they were just there to gather information about the home loan products offered by BBVA.

16.    Kennedy began requesting Plaintiff's and Benefield's personal information, which caused them concern that she was filling out an application on their behalf and might pull their credit.

17.    After Kennedy asked for Plaintiff and Benefield's person identifiers, such as address, date of birth and social security information, Plaintiff and Benefield again reiterated that Plaintiff and Benefield were not interested in a credit application and did not want their credit pulled.

18.    Kennedy represented that this was not an application and that BBVA would not pull Plaintiff's credit reports.

19.    Kennedy also acknowledged that Plaintiff and her husband did not desire to apply for credit and did not want to have their credit pulled.

20.    Kennedy assured Plaintiff that she was not filling out an application, but was instead just taking their information so that she could set up a profile in BBVA's system.

21.    Kennedy represented multiple times that there would be no credit pull or anything similar to a credit inquiry.

22.    She repeatedly claimed that she was merely collecting this information for their profile in BBVA's system.

23.     Neither Plaintiff nor Benefield ever directly or indirectly told, suggested, hinted or implied in any way to any Defendant BBVA or anyone else that Plaintiff wanted to apply for a loan or fill out an application for a loan with Defendant BBVA.

24.     Neither Plaintiff nor Benefield ever directly or indirectly told Defendant BBVA or anyone else that Plaintiff wanted Defendant BBVA to pull or access Plaintiff's credit report or credit information.

25.     In fact, both Plaintiff and Benefield explicitly stated that they were not applying for a loan and did not want BBVA or anyone working for BBVA to pull or access Plaintiff's credit report.

26.     Defendant BBVA had no permissible purpose to pull Plaintiff's credit report.

27.     BBVA knows that Plaintiff did not and has never requested a mortgage loan through BBVA.

28.     BBVA knows that Plaintiff has never communicated to it that Plaintiff desired a mortgage loan with BBVA.

29.     BBVA knows that Plaintiff did not and has never requested that Plaintiff be considered for a mortgage loan through BBVA.

30.     Defendant BBVA knew at the time it pulled Plaintiff's credit report that Plaintiff never authorized it to pull Plaintiff's credit report.

31.    Defendant BBVA knew it had no authority of any type to pull Plaintiff's credit report.

32.    Defendant BBVA knew it had no permission of any type to pull Plaintiff's credit report.

33.    Defendant BBVA knew it was wrong and illegal to pull Plaintiff's credit report.

34.    Defendant BBVA knew from its communications with Plaintiff and her fiancé Benefield, and from the lack of any request (verbal or written) for a mortgage loan in Plaintiff's name or to be considered for a mortgage loan in Plaintiff's name that Defendant BBVA had no reason to believe that it was obtaining Plaintiff's confidential credit report in connection with a credit transaction involving Plaintiff.

35.    Nevertheless, Defendant BBVA misrepresented, omitted or suppressed the fact that BBVA intended to pull Plaintiff's credit.

### **BBVA Illegally Pulls Plaintiff's Credit Reports**

36.    Despite the fact that Defendant BBVA had no authority or permission to pull Plaintiff's very personal and confidential credit report, this did not stop or deter Defendant BBVA from pulling Plaintiff's credit report.

37.    When Plaintiff left BBVA's branch, it had been made clear and there was no doubt that she was not applying for a loan with BBVA at that time, had not

filled out an application to be considered for a loan and did not agree or consent to BBVA accessing her credit reports to evaluate her for a home loan.

38.    Shortly after leaving BBVA, Plaintiff and her fiancé were shopping when Plaintiff received a call from Kennedy seeking some additional information from Plaintiff.

39.    Defendant BBVA through Kennedy informed Plaintiff that this was just a part of the information she needed to complete the profile.

40.    Kennedy, acting in the line and scope of her employment with Defendant BBVA, knew this was not true, but in fact that the information she was seeking was a part of a credit application and necessary in order to be able to access Plaintiff's credit reports. Kennedy misrepresented, suppressed or omitted these facts to Plaintiff.

41.    Alternatively, Kennedy did not know whether this information was true or not, but requested the information anyway.

42.    Alternatively, Kennedy promised Plaintiff she would not use the information to apply for credit or to access or pull Plaintiff's credit report to induce Plaintiff to provide her personal information so that she could complete a credit application and access or pull Plaintiff's credit reports.

43.    In addition to Kennedy's actions, Kennedy repeatedly asserted to Plaintiff and her fiancé that BBVA's branch manager, Reginal Jackson, directed

Kennedy to submit Plaintiff's information resulting in a credit pull despite having been informed and/or being aware that Plaintiff did not want to apply for or be considered for credit or a loan from BBVA and did not want or give permission for her credit reports to pulled or whether BBVA had any permissible purpose to pull Plaintiff's credit report.

44.     Alternatively, BBVA's branch manager, Reginald Jackson, directed Kennedy to submit Plaintiff's information resulting in a credit pull despite without inquiring and/or without knowing whether Plaintiff wanted to apply for or be considered for credit or a loan from BBVA, whether she wanted or gave permission for her credit reports pulled, or whether BBVA had any permissible purpose to pull Plaintiff's credit report.

45.     Additionally, BBVA's mortgage loan officer, Sue Bowman, instructed Kennedy to submit Plaintiff's information resulting in a credit pull despite having been informed and/or being aware that Plaintiff did not want to apply for or be considered for credit or a loan from BBVA and did not want or give permission for her credit reports to pulled.

46.     Alternatively, BBVA's mortgage loan officer, Sue Bowman, directed Kennedy to submit Plaintiff's information resulting in a credit pull despite without inquiring and/or without knowing whether Plaintiff wanted to apply for or be

considered for credit or a loan from BBVA or whether she wanted or gave permission for her credit reports pulled.

47.    BBVA's employees knew at the time they accessed or pulled Plaintiff's credit reports that Plaintiff had not applied for credit, a loan  and was not seeking any kind of credit transaction with BBVA.

48.    Alternatively, BBVA's employees did not know and failed to ascertain at the time they accessed or pulled Plaintiff's credit reports whether Plaintiff was applying  for credit, a loan or was seeking any kind of credit transaction with BBVA.

49.    Defendant BBVA pulled or accessed Plaintiff's credit report even though it knew or should have known it had no permission and no legitimate business purpose or reason to pull Plaintiff's credit report.

50.    All employees and agents of Defendant BBVA were acting within the line and scope of their employment/agency relationship with Defendant BBVA when dealing in any way with Plaintiff.

### **Plaintiff is Informed of the Illegal Credit Pull**

51.    A few minutes later, Plaintiff received a credit monitoring alert that a hard credit inquiry[2] of her credit report had occurred by a company called Credco on behalf of BBVA.

---

[2] Credit reports are typically designated as a "hard pull" or a "soft pull" – for any type of pull there must be a permissible purpose under the FCRA. The distinction is a hard pull damages a credit score and a soft pull does not.

52.   The notice informed Plaintiff that BBVA had in fact accessed and pulled Plaintiff's personal and confidential credit report.

53.   This was extremely upsetting to Plaintiff who stopped what she was doing and walked in the rain to inform Benefield of what BBVA had done.

54.   Not long after, Benefield received an email from BBVA stating, "Lauren has listed you as a co-borrower on their application with BBVA, so I'll need you to provide some information online in order to import your bank account."

55.   It is clear that BBVA had opened an application for a home loan for Plaintiff and Benefield despite their explicit instructions to the contrary and had accessed Plaintiff's credit information as a part of that bogus, illegitimate and unwanted application.

56.   Plaintiff and Benefield decided to immediately return to BBVA to find out what had happened and why they had pulled her credit reports without her permission and against her wishes and clear instructions.

**<u>Motives For BBVA's Illegal Conduct</u>**

57.   The illegal pulling of credit reports and trying to open accounts or loans without permission is a rampant problem at Defendant BBVA and at other banks, including the infamous recent similar wrongdoing at Wells Fargo Bank.

58.   There are many reasons that Defendant BBVA did this outrageous act, two of which are the pressure and incentives that Defendant BBVA puts on its

employees to close a large number of mortgage loans and the profit Defendant BBVA makes on mortgage loans.

59.     Defendant BBVA holds its loans and typically does not sell them as other banks do.  This is because Defendant BBVA has found the profit margin on its loans that it keeps to be high.

60.     Therefore, Defendant BBVA is willing to flagrantly violate the FCRA in its effort to persuade consumers to take out a loan with Defendant BBVA even when this means pulling credit reports illegally.

**Plaintiff Discovers BBVA's Outrageous Conduct
As BBVA Makes Excuses To Try To
Smooth Over Its Illegal Conduct**

61.     Plaintiff had several communications with Defendant BBVA about what happened and why it happened.

62.     Plaintiff returned to BBVA shortly after receiving notice of the hard inquiry.

63.     Plaintiff and Benefield asked to speak to the branch manager who was not there.

64.     Upon arriving, Plaintiff informed Kennedy that she had been notified of the hard inquiry on her credit and demanded that this be corrected immediately.

65.     Kennedy acknowledged that she was aware Plaintiff hadn't wanted her credit report accessed and attempted to place blame for the credit pull on others.

66.    Kennedy repeatedly attempted to blame her Manager, Reginald Jackson; the mortgage loan officer, Sue Bowman; and BBVA's new system on which she stated had not been sufficiently trained.

67.    Kennedy also attempted to have Plaintiff's fiancé send an email or letter to BBVA altering the statements in his prior email by blaming Jackson and Bowman.

68.    In the weeks after the credit pull, Kennedy's manager attempted to blame Kennedy for the credit pull and he refused to take the necessary steps to correct the situation.

69.    During this time, Bowman attempted to blame Kennedy while continuing to try to sell Plaintiff a mortgage product.

**<u>Damages to Plaintiff</u>**

70.    Plaintiff was, and continues to be, very upset over this outrageous invasion of Plaintiff's privacy, particularly since it was done by a large bank and against Plaintiff's will.

71.    Plaintiff and Benefield had gone to BBVA to research information about the products and services offered by BBVA related to a Mortgage because they believed BBVA to reputable.

72.    Plaintiff was shocked that this would happen at a bank like BBVA.

73.     Plaintiff had worked very hard over a period of years to build up her credit and credit score so that she and her fiancé would be in the best position possible once they found a home and were ready to purchase it.

74.     Plaintiff's credit was very important to her.

75.     Plaintiff was not going to try to get pre-approval until a few months later in April 2020 at the earliest, as they were not ready to apply for a loan at that time, so it was very important that there not be any unnecessary credit pulls at the time that Defendant BBVA pulled Plaintiff's credit report illegally.

76.     Plaintiff and her fiancé were aware that credit pulls could negatively impact their credit scores, making it more difficult to qualify for a loan they wanted and could result in a higher interest rate resulting in higher monthly payments for Plaintiff and her fiancé and costing them money over the life of the loan.

77.     While multiple mortgage pulls can be grouped together under the dominant scoring models (FICO), the time period Plaintiff was in would not be able to take advantage of this and would have had the unnecessary and unwanted credit pull by Defendant BBVA (which would lower her score) and then would have the required pulls later which would also lower her score.  Plaintiff did not need or want to have unnecessary pulls lowering her score.

78.    Plaintiff's credit monitoring app showed inquiries on both her TransUnion and Equifax credit reports by Credco on BBVA's behalf and later Experian, as well.

79.    Plaintiff's credit monitoring app also reflected damage to Plaintiff's credit, showing an immediate drop in Plaintiff's credit scores.

80.    Plaintiff's credit worthiness has suffered as a result of Defendant's conduct.

81.    As a result of Defendant's conduct, Plaintiff and her fiancé delayed looking for a house purchase.

82.    Defendant's conduct caused Plaintiff extreme worry, anxiety, stress, embarrassment, frustration and grief and manifested itself in physical symptoms as well, including but not limited to loss of sleep, crying, upset stomach, loss of appetite stress, tension, and arguments between Plaintiff and her fiancé related to BBVA's actions.

83.    The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## BBVA's Employees Are Not Adequately
## Trained or Supervised

84.    Kennedy claimed to Plaintiff that she was not aware as to whether any actions she took caused Plaintiff's credit report to be accessed or pulled.

85.    Kennedy claimed she was just doing what her manager told her to do in submitting the information on-line, despite the fact that she had not done it before and was not trained on how to submit the information.

86.    Kennedy informed Plaintiff that Defendant BBVA had just switched to a new system and that she was not familiar with it and had not been adequately trained on it.

87.    Kennedy was not familiar with the new systems implemented by BBVA, but admitted that her supervisors and other employees wanted her to use it so she could process applications or new customers more quickly.

88.    Kennedy admitted BBVA's employees were trying to do things too fast in terms of processing customers who had expressed interest in mortgage loan information and she admitted that the employees just need to slow down.

89.    BBVA did not provide adequate training for its employees regarding the requirements of the Fair Credit Reporting Act.

90.    BBVA did not provide adequate training to its employees to understand under what circumstances they could pull or access a consumer's credit report.

91.   BBVA's manager, mortgage loan officers and other employees were not trained to make sure they had a permissible purpose or permission before pulling or accessing a consumer's credit reports.

92.   BBVA did not adequately supervise its employees, such as Ms. Kennedy, the branch manager, Reginald Jackson and the mortgage loan officer Sue Bowman with the mortgage department to make sure they were not breaking the law by pulling or accessing a consumer's credit report without a permissible purpose or without their permission.

### Additional Factual Allegations

93.   It is a practice of the Defendant BBVA to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FCRA and state law.

94.   Defendant BBVA is a sophisticated business and it knows its conduct is wrong.

95.   All actions taken by Defendant BBVA were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the FCRA and/or state law and/or that it knew or should have known that its actions were in reckless disregard of the FCRA and/or state law.

96.     All employees and agents of Defendant BBVA who had any involvement with Plaintiff or Plaintiff's credit report acted within the line and scope of their employment or agency relationship with Defendant BBVA.

97.     Defendant BBVA has engaged in a pattern and practice of wrongful and unlawful behavior with respect to consumer reports and as such Defendant BBVA is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

98.     Defendant BBVA is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by its employees and agents.

99.     Plaintiff has suffered actual damages as a result of these illegal actions by Defendant BBVA in the form of past and future economic and monetary loss; past and future damage to her credit worthiness; past and future anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, mental anguish amongst other negative emotions, loss of sleep, crying, upset stomach, loss of appetite, tension between her and her fiancé, as well as suffering from unjustified and abusive invasions of personal privacy.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 et seq.

100.   Defendant BBVA is governed by the FCRA in accessing or pulling credit reports, including 15 U.S.C. Sections 1681b and 1681q.

101.   The FCRA forbids any person or company, even Defendant BBVA, from pulling a credit report without permission or a permissible purpose.

102.   The FCRA forbids Defendant BBVA from obtaining credit reports under false pretenses and allows imprisonment to occur for up to two years.

103.   Defendant BBVA violated 15 U.S.C Section 1681b and Section 1681q when it obtained and used Plaintiff's credit reports without authority or permission or a permissible purpose, as Plaintiff had not applied for credit, insurance or employment with BBVA.   It also obtained Plaintiff's credit report under false pretenses with the lies described in this Complaint.

104.   BBVS accessed, pulled and/or used Plaintiff's credit reports  illegally, in direct and clear violation of the FCRA and established law when it accessed, pulled and/or used Plaintiff's credit report by false pretenses.

105.   BBVA's violations of the FCRA were negligent, rendering it liable for damages under 15 U.S.C. Section 1681o.

106.   Alternatively, the conduct and actions taken by the Defendant BBVA were done with malice, were done willfully, were done with either the desire to harm Plaintiff or with the knowledge that its actions would very likely harm Plaintiff or that its actions were taken in violation of the FCRA and state law or that it knew or should have known that its actions were in willful or reckless disregard of the FCRA, rendering it liable for damages in an amount to be determined by the fact finder pursuant to 15 U.S.C. Section 1681n.

107.   All of the violations of the FCRA proximately caused the injuries and damages set forth in this Complaint.

108.   Plaintiff is entitled to recover actual damages, statutory and punitive damages, and costs and attorney's fees from Defendant in an amount to be determined by the fact finder and/or Court, pursuant to the FCRA.

## COUNT II.
## INVASION OF PRIVACY

109.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant BBVA violated Alabama state law as described in this Complaint.

110.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt

collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

111.   Defendant BBVA intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by illegally pulling Plaintiff's confidential and private credit report.

112.   Defendant BBVA intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct, thereby invading and intruding upon Plaintiff's right to privacy.

113.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

114.   The conduct of Defendant BBVA, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant BBVA which occurred in a way that would be highly offensive to a reasonable person in that position.

115.   All of the wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant BBVA, which has led to the Plaintiff's privacy being invaded.

116.   The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

117.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant BBVA.

118.   All acts of Defendant BBVA were committed with malice, intent, wantonness, and/or recklessness and as such Defendant BBVA is subject to punitive damages.

## COUNT III.
## FRAUD (INTENTIONAL FALSE STATEMENT)

119.   Defendant BBVA intentionally made false statements regarding important facts that caused Plaintiff harm.  Specifically, BBVA employee Angelique Kennedy stated to Plaintiff on or about February 24, 2020 and in conversations at BBVA's branch and shortly thereafter, both in person and by telephone that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open

a "profile" in BBVA's system and that it would not pull or access her credit information.

120.  BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

121.  After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that they be removed, BBVA employees stated that they immediately would correct the credit reporting.

122.  However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete her "application" to be pre-approved for a loan.

123.  Said statements by BBVA were false and BBVA knew the statements were false when made.

124.  When said statements were made Plaintiff did not know that they were false.

125.  BBVA intended for Plaintiff to rely on said statements.

126.  Plaintiff reasonably and justifiably relied on said statements.

127.  Plaintiff was harmed by said statements.

128.  At all times pertinent, BBVA's employees or agents were acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the

line and scope of the employer/employee and/or principal/agent relationship that existed between BBVA and its employees and/or agents. For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of Respondeat Superior.

129. Wherefore, Plaintiff seeks judgment in her favor against BBVA for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

**COUNT IV.**
**FRAUD (RECKLESS FALSE STATEMENT)**

130. Defendant BBVA recklessly made false statements regarding important facts that caused Plaintiff harm. Specifically, BBVA Angelique Kennedy and other employees stated to Plaintiff on or about February 24, 2020 and in conversations shortly thereafter, both in person, by telephone and via email and correspondence that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open a "profile" and that it would not pull or access her credit information.

131. BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

132. After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that

they be removed, BBVA employees stated that they would correct the credit reporting.

133.   However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete an "application" to be pre-approved for a loan.

134.   Said statements by BBVA were made without knowing if the statements were true or not.

135.   When said statements were made Plaintiff did not know that they were false.

136.   BBVA intended for Plaintiff to rely on said statements.

137.   Plaintiff reasonably and justifiably relied on said statements.

138.   Plaintiff was harmed by said statements.

139.   At all times pertinent, BBVA's employees or agents were acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the line and scope of the employer/employee and/or principal/agent relationship that existed between BBVA and its employees and/or agents.  For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of Respondeat Superior.

140.   Wherefore, Plaintiff seeks judgment in her favor against BBVA for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT V.
## FRAUD (MISTAKEN FALSE STATEMENT)

141.   Defendant BBVA mistakenly or innocently made false statements regarding important facts that caused Plaintiff harm.  Specifically, BBVA employee Angelique Kennedy stated to Plaintiff on or about February 24, 2020 and in conversations at BBVA's branch and shortly thereafter, both in person, by telephone that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open a "profile" in BBVA's system and that it would not pull or access her credit information.

142.   BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

143.   After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that they be removed, BBVA employees stated that they would correct the credit reporting.

144.   However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete her "application" to be pre-approved for a loan.

145.   Said statements by BBVA were false.

146.   BBVA intended for Plaintiff to rely on said statements.

147.   Plaintiff reasonably and justifiably relied on said statements.

148.   Plaintiff was harmed by said statements.

149.   At all times pertinent, BBVA's employees or agents were acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the line and scope of the employer/employee and/or principal/agent relationship that existed between BBVA and its employees and/or agents.  For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of Respondeat Superior.

150.   Wherefore, Plaintiff seeks judgment in her favor against BBVA for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT VI.
## FRAUD (DECEIT)

151.   Defendant BBVA intentionally made false statements regarding important facts that caused Plaintiff harm.  Specifically, BBVA employee Angelique Kennedy stated to Plaintiff on or about February 24, 2020 and in conversations at BBVA's branch and shortly thereafter, both in person, by telephone that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open

a "profile" in BBVA's system and that it would not pull or access her credit information.

152.  BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

153.  After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that they be removed, BBVA employees stated that they would correct the credit reporting.

154.  However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete her "application" to be pre-approved for a loan.

155.  Said statements by BBVA were false.

156.  BBVA knew that its statements were false and Plaintiff did not know that the statements were false.

157.  Plaintiff acted and failed to act to her detriment and were harmed by said statements.

158.  At all times pertinent, BBVA's employees or agents was acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the line and scope of the employer/employee and/or principal/agent relationship that

existed between BBVA and its employees and/or agents.  For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of Respondeat Superior.

159.   Wherefore, Plaintiff seeks judgment in her favor against BBVA for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT VII.
## FRAUD (CONCEALMENT)

160.   Defendant BBVA withheld or hid important facts from Plaintiff.  Specifically, BBVA employee Angelique Kennedy stated to Plaintiff on or about February 24, 2020 and in conversations at BBVA's branch and shortly thereafter, both in person, by telephone that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open a "profile" in BBVA's system and that it would not pull or access her credit information.

161.   BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

162.   After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that they be removed, BBVA employees stated that they would correct the credit reporting.

28

163.  However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete her "application" to be pre-approved for a loan.

164.  Plaintiff did not know of the important facts that BBVA intended and/or planned to take and use her personal information to submit a loan application to pull or access her credit reports.

165.  As a result of BBVA's deceptions, Plaintiff acted and failed to act to her detriment and was harmed.

166.  Defendant BBVA was under an obligation to make known to Plaintiff that it intended and/or planned to take and use her personal information to submit a loan application to pull or access her credit reports.

167.  At all times pertinent, BBVA's employees or agents were acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the line and scope of the employer/employee and/or principal/agent relationship that existed between BBVA and its employees and/or agents.  For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of respondeat superior.

168.  Wherefore, Plaintiff seek judgment in their favor against BBVA and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT VIII.
## PROMISORY FRAUD

169. Defendant BBVA lied to and withheld or hid important facts from Plaintiff. Specifically, BBVA employee Angelique Kennedy stated to Plaintiff on or about February 24, 2020 and in conversations at BBVA's branch and shortly thereafter, both in person, by telephone that BBVA would not open or submit an application for a home loan on her behalf; that the personal identifying information Kennedy requested for Plaintiff would only be used to open a "profile" in BBVA's system and that it would not pull or access her credit information.

170. BBVA's employee also admitted that she knew before submitting an application and requesting Plaintiff's credit reports that Plaintiff had no intentions of applying for credit with BBVA.

171. After Plaintiff informed BBVA that she had been made aware of the credit pulls, the negative impact they were having on her credit scores and demanded that they be removed, BBVA employees stated that they would correct the credit reporting.

172. However, BBVA and its employees contacted Plaintiff repeatedly over the following days and weeks attempting to have her complete her "application" to be pre-approved for a loan.

173.   Plaintiff did not know of the important facts that BBVA intended and/or planned to take and use her personal information to submit a loan application to pull or access her credit reports.

174.   At the time BBVA made the false statements, it intended to not perform as promised.  It always intended to pull Plaintiff's credit reports despite its promises to the contrary.

175.   When said statements were made Plaintiff did not know that they were false.

176.   BBVA intended for Plaintiff to rely on said statements.

177.   Plaintiff reasonably and justifiably relied on said statements.

178.   Plaintiff was harmed by said statements.

179.   At all times pertinent, BBVA's employees or agents were acting as the agent of and for the benefit of BBVA or their acts and omissions were undertaken in the line and scope of the employer/employee and/or principal/agent relationship that existed between BBVA and its employees and/or agents.  For that reason, BBVA is liable to the Plaintiff pursuant to the doctrine of respondeat superior.

180.   Wherefore, Plaintiff seek judgment in their favor against BBVA and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT IX.
## NEGLIGENT HIRING, TRAINING AND SUPERVISION OF INCOMPETENT EMPLOYEES AND/OR AGENTS

181.   Defendant BBVA's employees and agents are allowed and encouraged to break the law in order to make loans.

182.   This includes all of the violations of the law described in this Complaint and the paragraphs in this Count.

183.   Defendant BBVA is aware of the wrongful conduct of its employees and agents.

184.   Defendant BBVA negligently hired, trained, retained or supervised incompetent employees and agents, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant BBVA is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

185.   Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of employees and agents but it is reasonable to infer this as there is no other explanation for how a large bank, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged unless this was part of a plan to be negligent in allowing incompetent employees and agents to run wild and damage Plaintiff while Defendant BBVA sat

back to reap the rewards of the wrongful conduct it had sowed.  The details of this will come out in discovery.

186.   The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT X.
## WANTON HIRING, TRAINING AND SUPERVISION OF INCOMPETENT EMPLOYEES AND/OR AGENTS

187.   Defendant BBVA's employees and agents are allowed and encouraged to break the law in order to collect debts.

188.   This includes all of the violations of the law described in this Complaint and the paragraphs in this Count.

189.   Defendant BBVA is aware of the wrongful conduct of its employees and agents.

190.   Defendant BBVA wantonly hired, trained, retained, or supervised incompetent employees and agents, who were allowed or encouraged to violate the law as was done to Plaintiff and Defendant BBVA is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

191.   Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of employees and agents but it is

reasonable to infer this as there is no other explanation for how a large bank, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged, unless this was part of a well-orchestrated design and plan of wantonly allowing incompetent employees and agents to run wild and damage Plaintiff while Defendant BBVA sat back to reap the rewards of the wrongful conduct it had sowed.  The details of this will come out in discovery.

192.   The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XI.
## INTENTIONAL HIRING, TRAINING, AND SUPERVISION OF INCOMPETENT EMPLOYEES AND/OR AGENTS

193.   Defendant's employees and agents are allowed and encouraged to break the law in order to collect debts.

194.   This includes all of the violations of the law described in this Complaint and the paragraphs in this Count.

195.   Defendant BBVA is aware of the wrongful conduct of its employees and agents.

196.   Defendant BBVA intentionally hired, trained, retained, or supervised incompetent employees and agents, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant BBVA is thereby responsible to the

34

Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

197.   Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of employees and agents but it is reasonable to infer this as there is no other explanation for how a large bank, with countless compliance employees and lawyers, could possibly allow the wrongful conduct alleged, unless this was part of an intentional well-orchestrated design and plan of allowing incompetent employees and agents to run wild and damage Plaintiff while Defendant BBVA sat back to reap the rewards of the wrongful conduct it had sowed.  The details of this will come out in discovery.

198.   The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XII.
## WANTON, RECKLESS, INTENTIONAL AND MALICIOUS CONDUCT

199.   Defendant BBVA had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

200.   Defendant BBVA had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

201.   Defendant BBVA acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint and the paragraphs in this Count.

202.   Defendant BBVA violated all of the duties Defendant BBVA had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

203.   It was foreseeable, and Defendant BBVA did in fact foresee it, the each and every action of Defendant BBVA would lead and did lead to the exact type of harm suffered by Plaintiff.

204.   To pull Plaintiff's private, personal, and confidential credit report without permission and in the face of explicitly being told by the consumer not to pull (and promising not to pull) can only be described as malicious conduct or at least as reckless conduct.

205.   The conduct of the Defendant BBVA has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## **PRAYER FOR RELIEF**

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant BBVA for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $750,000.00), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**/s/ John G. Watts**
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 facsimile
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

**/s/ John G. Watts**
**OF COUNSEL**

**Please serve Defendant by certified mail at the following address:**

BBVA USA
c/o CT Corporation System
2 North Jackson Street, Ste 605
Montgomery, AL 36104

ELECTRONICALLY FILED
10/6/2020 9:46 PM
01-CV-2020-903456.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| LAUREN CHAMBERS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.:** |
| **v.** | ) |
| | ) |
| BBVA USA a/k/a | ) |
| BBVA COMPASS, | ) |
| | ) |
| **Defendant.** | |

## PLAINTIFF'S FIRST REQUEST FOR DOCUMENTS TO DEFENDANT

**PLEASE TAKE NOTICE** that pursuant to the Alabama Rules of Civil Procedure, Plaintiff propounds the following discovery requests:

## INSTRUCTIONS

Any references to "Defendant", "Defendants", "Defendant's" or "Defendant(s)" shall be treated as referring to each and every Defendant named within this lawsuit, individually and collectively, as may be appropriate.  As used in these requests, any references indicating the use of masculine or feminine and any references indicating the use of singular or plural, shall be used interchangeably.

If you are in any way confused, unclear, uncertain, or troubled by any request, contact Plaintiff's counsel to resolve any issues.

If any objection is made to any of the requests, the Defendant shall make any such objection and state the relevant legal basis for such objection.  If any objection is made based upon a claim of privilege as to any response, Defendant shall state the legal basis for the privilege Defendant is invoking and provide a detailed privilege log to support the invocation of such privilege.

Each and every discovery request herein is deemed continuing in nature pursuant to the Alabama Rules of Civil Procedure, and Defendant is obligated to seasonably amend and provide any updated information that renders the responses to one or more of these discovery requests, incomplete or inaccurate, and serve those amended responses upon the undersigned Plaintiffs' counsel.

As used in these discovery requests, the term "document" or "documents" means every writing or recorded material of every type and description, of any kind, that is in the possession, control or custody of Defendant, which Defendant has knowledge, whether originals, copies or facsimiles.  Such writings or recordings include, but are not limited to, collection notes, electronic computer collection records, printouts of collection records, sample collection letters, Metro-data tapes, diskettes, computer hard drives, tape backups, Zip-type disks, magnetic media of any kind, CD-ROM, DVD, correspondence, memoranda, stenographic notes, handwritten notes, contracts, documents, rough drafts, inter-office memoranda, memoranda for the files, letters, research materials, logs, diaries, forms, bank statements, tax returns, card files,

books of account, journals, ledgers, invoices, diagrams, minutes, manuals, studies, publications, pamphlets, pictures, films, voice recordings, reports, surveys, minutes, statistical compilations, data processing cards, computer records, tapes, print-outs, agreements, communications, state and federal governmental hearings, reports, correspondence, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, notebooks, note charts, charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants, photographs, video tape, motion picture film, digital photographs, brochures, advertisements, circular, press releases, drafts, any marginal comments appearing on any document, all other writings, books of all nature and kind whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced, all tape recordings (whether for computer, audio, or visual replay) and all other written, printed, and recorded matter or tangible things upon which words, phrases, symbols or information of any kind are recorded, encrypted or otherwise stored.

A request to "identify" a document is a request to state the following, as applicable:

a.    The date of the document;

b.    The type of document;

c. The names and present addresses of the person or persons who prepared the document and of the signers and addressors of the document;

d. The name of the employer or principal whom the signers, addressers and preparers were representing;

e. The present location of the document;

f. The name and current business and home addresses of the present custodian of the original document, and any copies of it;

g. A summary of the contents of the document; and

h. If the original document was destroyed, the date and reason for or circumstances under which it was destroyed.

Plaintiff requests that the documents be made available for this inspection at the offices of counsel for Plaintiff at **The Kress Building 301 Nineteenth Street North, Birmingham, Alabama 35203**.

These discovery requests are intended to cover all documents in Defendant's possession, or subject to their custody and control, regardless of location.  If there are no such documents, please so state.  If there are such documents, please list and mark appended documents responsive to each request.  (Alabama Rules of Civil Procedure, Rule 34(b)).

Each interrogatory propounded herein should be answered upon Defendant entire knowledge from all sources and all information in Defendant's possession or

otherwise available to Defendant, including information from Defendant's officers, employees, agents, representatives or consultants and information which is known by each of them.  An incomplete or evasive answer is deemed a failure to answer.

If any answer is qualified, Defendant shall state specifically the terms of each qualification and the reasons for it.  If Defendant feels that a request cannot be answered in full, state the part which can be answered and answer the same in full to the extent possible; state further and specifically the reason(s) why the remainder cannot be answered.

For purpose of these requests, a statement is (a) a written statement signed or otherwise adopted or approved by the person making it, or (b) stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

Unless otherwise stated, all discovery requests cover a time period of **five (5) years** prior to the filing of the suit to the day the Defendant responds to the discovery.

## <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

Pursuant to Rule 34 of the Alabama Rules of Civil Procedure, Plaintiff requests that Defendant produces the documents described herein and permit Plaintiff's attorneys to inspect and copy such documents, as they may desire:

1.     Please produce all documents, data or information involving communications between you and any of the other business, entity, credit bureau, or credit reporting agency, reseller, third party, vendor and/or redistributors in which the communication in any way referenced Plaintiff and/or any of her personal identifiers or information.

2.     Please produce all documents involving or constituting communications between you and the Plaintiff or anyone acting on or purporting to act on the Plaintiff's behalf.

3.     Please produce any and all documents, credit reports or credit information you pulled, accessed or obtained related to Plaintiff.

4.     Please produce any and all documents, data or information which purport to evidence any permission, agreement or authorization by Plaintiff for you to pull, access or obtain Plaintiff's credit reports, credit disclosures and/or consumer reports or information.

5.     Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices for requesting a credit report, consumer report or credit disclosure, by whatever name called, for a customer or potential customer of yours.

6.     Please produce your policy manuals, procedure manuals, or other documents, which reference, constitute or duplicate the Fair Credit Reporting Act (or any

part thereof) and its revisions or amendments provided to your employees, during each of the three (3) years prior to this lawsuit and up to the present.

7.      Please produce your policy manuals, procedure manuals, training manuals, or other documents or videos (whether in electronic or print format),which are provided to your employees or independent contractors regarding the Fair Credit Reporting Act's requirements in order for your employees to access, collect, pull or request of an individual's credit information, credit report or consumer report, by whatever name called, during each of the three (3) years prior to this lawsuit and up to the present.

8.      Please produce your manuals, procedure, documents, emails, memoranda, videos or other information (whether in electronic or print format) used to train your employees or independent contractors regarding the Fair Credit Reporting Act's requirements in order for your employees to access, collect, pull or request of an individual's credit information, credit report or consumer report, by whatever name called, during each of the three (3) years prior to this lawsuit and up to the present.

9.      Please provide any and all data, document, information, reports, memoranda, investigative notes or findings, emails and/or communications (whether in electronic or print format) related to your employees' accessing Plaintiff's credit information, credit reports, credit disclosures, and/or consumer report.

10.  Please provide any and all data, document, information, reports, memoranda, investigative notes or findings, emails and/or communications (whether in electronic or print format) related to your employees' communications with Plaintiff after BBVA pulled her credit reports.

11.  Please provide any and all data, documents, information, reports, memoranda, investigative notes or findings, emails and/or communications related to any changes to your policies, procedures or training provided to employees relative to pulling or accessing a consumer's credit reports or information and/or making sure a consumer has given permission to access his or her credit reports or information.

12.  Please produce your contract, documents, manuals or other recorded data, concerning your subscriber relationships with any of the major credit bureaus, credit reporting agencies and/or any redistributor/reseller of credit information, including but not limited to Credco regarding your requesting credit reports or information for a consumer.

13.  Please produce all of your documents evidencing or including data concerning the names, addresses, telephone numbers and personnel files of current employees and current whereabouts of each and every one of your employees who communicated with Plaintiff, or who pulled, or accessed or requested

Plaintiff's credit information, credit report, consumer report or credit disclosure, by whatever name called.

14. Please provide a complete audit trail, emails, account notes or other information of any document(s), computer(s), or other data held by you which constitute, indicate, address or discuss the actions taken by you or your employees as alleged in the complaint.

15. Please produce any records, documents, data or information constituting, evidencing, describing or discussing or which contain information about communications between you and Plaintiff and/or any other individual purporting to act on behalf of Plaintiff or with any consumer reporting agency, furnisher as that term is defined by the FCRA, third party Vendor, government bureau or regulatory agency or any other entity that in any way relates or refers to the Plaintiff.

16. Please produce any and all documents constituting or evidencing any disciplinary action taken by you against Angelique Kennedy, Reginald Jackson, Sue Bowman, Shelly Compton or any other of your employee(s) who accessed Plaintiff's credit information, were involved in accessing plaintiff's credit information or who communicated with Plaintiff or anyone purporting to act on Plaintiff's behalf.

17.  Please produce any and all documents, memoranda or information constituting or evidencing the terms and conditions of the compensation, bonuses, targets and/or goals of your branch manager, mortgage loan officer(s), and Angelique Kennedy or any other individual who pulled or obtained Plaintiff's credit disclosure, credit information, credit report and/or consumer report, by whatever name called, or who was involved in any way in the authorization, pulling or obtaining of plaintiff's credit information, credit report, consumer report and/or credit disclosure, by whatever name called, in February 2020.

18.  Please produce any and all documents, data, information and/or communications (whether electronic, in writing or otherwise) between you and any entity, including but not limited to credit bureaus, credit reporting agencies, vendors, redistributors, which, in any way, referenced Plaintiff. This request would include any credit report, consumer report or credit disclosures, by whatever name called, any efforts to correct, remove or suppress the credit inquiry on Plaintiff's credit or consumer files, or any GEIS [General Electric Information Services]-based and E-Oscar communications, UDFs, AUDFs, CDVs, ACDVs, tape transfers, system to system transfers, phone calls, e-mails, facsimiles, and other means of communication.

Respectfully Submitted,

**/s/ John G. Watts**
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 facsimile
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**



AlaFile E-Notice

01-CV-2020-903456.00

To:   JOHN GRIFFIN WATTS
      john@wattsherring.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

LAUREN CHAMBERS V. BBVA USA
01-CV-2020-903456.00

The following complaint was FILED on 10/6/2020 9:46:37 PM

Notice Date:     10/6/2020 9:46:37 PM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2020-903456.00

To:  BBVA USA
     C/O CT CORPORATION SYSTEM
     2 NORTH JACKSON STREET, S
     MONTGOMERY, AL, 36104

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

LAUREN CHAMBERS V. BBVA USA
01-CV-2020-903456.00

The following complaint was FILED on 10/6/2020 9:46:37 PM

Notice Date:     10/6/2020 9:46:37 PM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2020-903456.00 |
| --- | --- | --- |

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### LAUREN CHAMBERS V. BBVA USA

**NOTICE TO:** BBVA USA, C/O CT CORPORATION SYSTEM 2 NORTH JACKSON STREET, S, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), JOHN GRIFFIN WATTS
,

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 301 19th Street North, BIRMINGHAM, AL 35203 .

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of LAUREN CHAMBERS pursuant to the Alabama Rules of the Civil Procedure.

| 10/06/2020 | /s/ JACQUELINE ANDERSON  SMITH | By: |
| --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.    /s/ JOHN GRIFFIN WATTS

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____ .

*(Date)*

_____          _____

*(Type of Process Server)*          *(Server's Signature)*          *(Address of Server)*

_____

*(Server's Printed Name)*          *(Phone Number of Server)*



# NOTICE TO CLERK

REQUIREMENTS FOR COMPLETING SERVICE BY
CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
LAUREN CHAMBERS V. BBVA USA

01-CV-2020-903456.00

To:  CLERK BIRMINGHAM
     clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $9.00

Parties to be served by Certified Mail - Return Receipt Requested

BBVA USA                                          Postage: $9.00
C/O CT CORPORATION SYSTEM
2 NORTH JACKSON STREET, S
MONTGOMERY, AL 36104

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BBVA USA

C/O CT CORPORATION SYSTEM
2 NORTH JACKSON STREET, S
MONTGOMERY, AL 36104

9590 9402 5246 9154 9130 78

2. Article Number (Transfer from service label)

7020 0640 0001 1593 3854

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

S/C

CV. 20.90356

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

7020 0640 0001 1593 3854

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for instructions

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BBVA USA

C/O CT CORPORATION SYSTEM
2 NORTH JACKSON STREET, S

MONTGOMERY, AL 36104



9590 9402 5246 9154 9130 78

2. Article Number (Transfer from service label)

7020 0640 0001 1593 3854

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Jennifer Jackson
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

OCT 0 9 2020

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

S/C

CV·20·903456

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery
   )0)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

USPS TRACKING #



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 5246 9154 9130 78

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

JACQUELINE ANDERSON SMITH, CLERK
ROOM 400 JEFF CO COURTHOUSE
716 RICHARD ARRINGTON JR BLVD., NO.
BIRMINGHAM, ALABAMA 35203

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

OCT 15 2

JACQUELINE ANDERSON SMITH
CLERK



AlaFile E-Notice

01-CV-2020-903456.00

Judge: MARSHELL JACKSON HATCHER

To:   WATTS JOHN GRIFFIN
      john@wattsherring.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

LAUREN CHAMBERS V. BBVA USA
01-CV-2020-903456.00

The following matter was served on 10/9/2020

**D001 BBVA USA**
**Corresponding To**
CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov



AlaFile E-Notice

01-CV-2020-903456.00

Judge: MARSHELL JACKSON HATCHER

To:  HERRING MYLES STANLEY JR.
     stan@wattssherring.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

LAUREN CHAMBERS V. BBVA USA
01-CV-2020-903456.00

The following matter was served on 10/9/2020

**D001 BBVA USA**
**Corresponding To**
CERTIFIED MAIL

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov